IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAM WANG PRODUCE, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 1:09-cv-12 |
| ) | |
| ) | |
| EE MART FC, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Yorktowne's Motion to Join and Intervene, and for Relief from Orders Disposing of Insurance Proceeds in Which it has Interest (Dkt. No. 43). In an order issued June 29, 2009 the Court granted Yorktowne's Motion to Join and Intervene. The Court now DENIES Yorktowne's request for relief from orders disposing of insurance proceeds.

### Background

Yorktowne is the owner of the Yorktowne Shopping Center in Falls Church, Virginia. On March 12, 2007, Yorktowne and EE Mart FC, LLC ("EE Mart") entered into a lease agreement pursuant to which EE Mart occupied 22,513 square feet of premises for the operation of a grocery store. Under its lease agreement with Yorktowne, EE Mart was required to maintain comprehensive insurance that named Yorktowne as an additional insured. At the end of 2008 EE Mart changed insurers and acquired coverage with Travelers Insurance Company ("Travelers") for personal property damage and business interruption coverage. Their policy, no. I-680-9328M213-TIL-09, became effective on January 1, 2009. *See* Travelers Policy Declarations.

1

The insurance limit for personal property damage to EE Mart's inventory, fixtures, and equipment was $1.5 million. The insurance limit for business interruption services, including ongoing payroll, lost profits, rent, and clean up expenses was $7.5 million. Two payments were made to Travelers by EE Mart to cover insurance premiums under the policy: 1) $2,591.40 on January 13, 2009; and 2) $6,204.00 on January 21, 2009. Both payments were drawn against EE Mart's general operating checking account . . . maintained at Chevy Chase Bank, which EE Mart funded with its inventory sales proceeds.

On January 7, 2009, plaintiff Sam Wang Produce, Inc. ("Sam Wang") filed this case against EE Mart and its principal seeking unpaid debts relating to the sale of produce within the meaning of the Perishable Agricultural Commodities Act ("PACA"). On January 19, 2009, a fire completely destroyed EE Mart's premises. On January 21, 2009, two days following the fire, the Court conducted a hearing on the plaintiffs' request for a temporary restraining order. At the time of the hearing the plaintiffs did not know about the fire. Following the initial hearing, plaintiffs learned about the fire and of available insurance proceeds of $1.5 million dollars. On January 30, 2009 plaintiffs amended their motion for preliminary injunction, this time addressing the fire. On February 6, 2009, plaintiffs and EE Mart agreed to a temporary restraining order freezing the assets of EE Mart and resetting the hearing on the temporary restraining order to February 27, 2009. At the hearing on February 27, 2009, the Court considered the disposition of EE Mart's assets. The Court entered an order granting plaintiffs' request to freeze insurance proceeds and directing payment of the proceeds. In an order dated March 3, 2009, the Court ordered disbursement of $682,343.91 of the proceeds to plaintiffs, along with payment of $119,075.11 into the court registry, pending resolution of disputed sums owed between the parties. This sum of $119,075.11 was then dispersed among the parties in an

2

order dated March 30, 2009.

On February 19, 2009 Yorktowne filed suit in Fairfax County Circuit Court to try and insure EE Mart's restoration of the premises using the required insurance proceeds. Yorktowne learned of the proceedings in the Eastern District of Virginia on April 27, 2009 from EE Mart's counsel. On May 8, 2009 Yorktowne filed its motion to join and intervene and also requested the Court grant relief from orders disbursing insurance proceeds to plaintiffs Sam Wang, *et al.* On June 29, 2009, the Court issued an order granting Yorktowne's motion to intervene. The Court did not issue a memorandum opinion regarding Yorktowne's request for relief from the orders dispensing the insurance proceeds. Instead, the Court gave Yorktowne the opportunity to propound discovery to determine whether the insurance proceeds are subject to the PACA trust. On November 30, 2009, Yorktowne submitted a notice to the Court stating that the evidence produced to them during discovery was insufficient for them to demonstrate that assets of EE Mart destroyed in the fire were not subject to PACA.

## PACA

Congress enacted PACA in 1930 to regulate commerce in perishable agricultural commodities, which are defined by the Act as "[f]resh fruits and fresh vegetables of every kind of character," "whether or not frozen or packaged on ice." 7 U.S.C. § 499a(b)(4)(A). The Act was "designed primarily for the protection of the producers of perishable agricultural products- most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing." *In re Kornblum & Co.*, 81 F.3d 280, 283 (2nd Cir. 1996) (citing H.R. Rep. No. 1196 (1955), *reprinted in* 1956 U.S.C.C.A.N. 3699, 3701). In 1984, PACA was amended to "increase

the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due has been received by them." 1984 U.S.C.C.A.N. 406.

The Act establishes a scheme in which a purchaser of produce on credit ("Produce Debtor") is required to hold the produce and its derivatives or proceeds in trust for the unpaid seller. *In re Kornblum*, 81 F.3d at 284. PACA "imposes a 'non-segregated floating trust' on the commodities and other derivatives, and permits the co-mingling of trust assets without defeating the trust. . . . Through this trust, the sellers of commodities maintain a right to recover against the purchases superior to all creditors, even secured creditors." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2nd Cir. 1995). Ordinary principles of trust law apply to the trusts created by the Act, so that the Produce Debtor holds the legal title to the produce and its derivatives or proceeds, but the seller retains an equitable interest in the trust property pending payment. *Id.* (citing Restatement (Second) of Trusts § 2 (1959)).

The question before the Court is whether insurance proceeds obtained by the defendants after EE Mart was damaged by fire are PACA trust property.

Discussion

Courts have established that the burden of proof is on the party opposing a claim that a PACA buyer's assets are subject to a PACA trust to demonstrate which particular assets are not part of the trust. *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010, 1014 (6th Cir. 1993). In *Kornblum*, the Second Circuit set forth a test to determine whether assets are subject to the PACA trust. Under the *Kornblum* test, assets are presumed to be subject to the PACA trust unless it is shown that: (1) no PACA trust existed when the asset in question was purchased; (2) the asset was not purchased with PACA trust assets; or (3) subsequent to

purchasing the asset, the buyer paid in full all suppliers, thereby terminating the trust. *See In re Kornblum*, 81 F.3d at 287. Since the Second Circuit's decision in *Kornblum*, other courts have adopted the same test. *See J.A. Besteman Co. v. Carter's, Inc.*, 439 F. Supp. 2d 774, 778 (W.D. Mich. 2006); *Atl. Coast Produce, Inc. v. McDonald Farms, Inc.*, 2004 WL 1381165 (W.D. Va. 2004). This Court also adopts the *Kornblum* test and will apply it to the facts of the present case.

Evidence submitted to the Court establishes that $8,795.40 of PACA trust assets were paid toward the Travelers Insurance policy premiums. Since PACA trust assets were used to pay these premiums, this amount is presumed to be PACA trust monies under the *Kornblum* test.[1] Yorktowne argues that, assuming PACA trust assets were used to pay the insurance premiums, the amount of PACA trust lien should be limited to $8,795.40, the actual amount of the premiums paid for with trust assets. They argue that an unfair windfall to the PACA trust creditors would result if they were able to collect any additional money from the insurance proceeds.

The Court, however, disagrees that Sam Wang cannot recover anymore than the premium values. The holding in *Kornblum* does not specify the amount of proceeds which should be deemed subject to the PACA trust. Additionally, the exact facts of this case present an issue of first impression as the Court is unable to find any case that involves the use of PACA trust assets to pay insurance premiums to acquire and maintain an insurance policy that insures, at least in part, PACA trust assets.[2] Since there is no case law directly on point, the Court must look to

---

[1] In furtherance of this holding, the Court also notes that the Restatement (Second) of Trusts states under general trust principles that a trust beneficiary is entitled to enforce either a constructive trust or an equitable lien against property acquired by the trustee by disposition of trust property, as long as the product of the trust property is held by the trustee and can be traced. Restatement (Second) of Trusts § 202(1).

[2] Yorktowne points to two cases, *In re Bear Kodiak Produce, Inc.*, 283 B.R. 577 (Bankr. D. Ariz. 2002) and *Six L's Packing Co. v. West Des Moines State Bank*, 967 F.2d 256 (8th Cir. 1992) as being instructive on this area of the law. However, while both cases do involve the issue of whether insurance proceeds are PACA trust assets, neither is directly on point. The main difference is that in neither of the cited cases is the insurance policy taken out to cover PACA trust assets. In *Bear Kodiak*, the insurance policy was a life insurance policy, and the court held that

other sources to render its decision. The Restatement (Second) of Trusts Section 233, comment b, establishes that insurance proceeds received for destroyed or damaged trust property are replacement assets for the former trust property: "If trust property is destroyed by fire or other casualty, the proceeds of insurance thereon received by the trustee are principal." Thus, "if a house owned by the trustee is insured as to its entire value against fire and is destroyed, a payment made by the insurance company on account of the loss will constitute replacement of trust property, and hence such sum should be replaced in the trust principal account." George T. Bogert, *Trusts*, p. 428 (6th Ed.). In this case the $1.5 million insurance policy was meant to cover personal property damage to EE Mart's inventory, fixtures, and equipment in the event of fire. Included in EE Mart's inventory which was destroyed in the fire were PACA trust assets. The Court finds that since the insurance policy was intended to cover PACA trust assets, any insurance proceeds that are paid out to cover destroyed PACA assets should also be considered PACA trust assets. There will be no windfall to the PACA trust creditor, in this case Sam Wang, as Yorktowne argues unless plaintiffs receive more than is owed to them. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 78 (2nd Cir. 1990) (stating that produce creditors may only recover 'to the extent of the amount owed them' under the contract). In this case, the plaintiffs are only seeking to recover PACA trust assets in the amount owed to them under their invoices with EE Mart for the sale of produce plus prejudgment interest and attorneys' fees. *See Atl. Coast Produce*, 2004 WL 1381165 (PACA allows for recovery of contract interest and attorneys' fees). Therefore, the Court finds that the plaintiffs are entitled to insurance proceeds in the amount of all PACA trust assets destroyed in the fire plus interest and attorneys' fees.

---

"at most, Callaway would be entitled to an equitable lien on the Funds only for the actual amounts of PACA trust assets expended on the premiums." 283 B.R. at 585. In *Six L's*, the proceeds were from a business interruption insurance policy which did not cover losses of inventory, *i.e.* PACA trust assets. 967 F.2d at 258. Additionally, in that case the question was whether the insurance proceeds became PACA trust assets when commingled with trust assets, not whether the insurance proceeds on their own would constitute PACA trust assets. *Id.*

The Court gave Yorktowne the opportunity to propound discovery and then demonstrate that assets of EE Mart destroyed in the fire were not subject to the PACA trust; however, Yorktowne has been unable to do this. The only conclusion the Court can then draw is that the assets destroyed in the fire were the PACA trust assets invoiced by the plaintiffs and which plaintiffs are thereby entitled to recover.

## Conclusion

For the reasons stated above, Yorktowne's request for relief from the orders disposing of the insurance proceeds is DENIED.

February 16, 2010
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge